## GOODMAN *v.* NIBLACK.

1. A., who had a contract with the United States, agreed with B., in 1847, that the latter should perform it, and that the profits should be equally divided between them. Thereupon they and. C. executed an instrument in which the agreement was recited, and A., for the due fulfilment thereof, assigned the contract to C. as trustee. A controversy having arisen as to the amount due upon the contract, Congress, in 1870, authorized C. as such trustee to sue the United States therefor, and subsequently made an appropriation to pay the judgment which he recovered. *Held,* that as the assignment was thus recognized by the government, the parties to the agreement and those claiming under them are precluded from setting up that the contract was not assignable.

2. A. made in 1860 an assignment for the benefit of his creditors, which included all his rights, credits, effects, and property of every description. *Held,* that the assignment, although it covered whatever might be due to him under his contract with the government, was not within the prohibition of the act of Feb. 26, 1853 (10 Stat. 170, re-enacted in sect. 3477, Rev. Stat.), nor in violation of public policy.

3. *Spofford* v. *Kirk* (97 U. S. 484) and *Erwin* v. *United States* (id. 392) cited and examined.

4. Where a bill is filed to enforce a claim or lien upon a specific fund within reach of the court, and such of the defendants as are neither inhabitants of nor found within the district do not voluntarily appear, the Circuit Court has jurisdiction to adjudicate upon their right to, or interest in, the fund, if they be notified of the pendency of the suit by service or publication, in the mode prescribed by sect. 738 of the Revised Statutes.

5. In such a case, where it appears by the bill that certain non-residents are indispensable parties, and they are not made parties, the bill is bad on demurrer, and should be dismissed without prejudice.

·APPEAL from the Circuit Court of the United States for the District of Indiana.

This was a bill in chancery filed by Charles Goodman against William E. Niblack, administrator *de bonis non* of Albert G. Sloo, deceased. A demurrer to it was sustained, and Goodman appealed.

The case is fully stated in the opinion of the court.

*Mr. James C. Denny* and *Mr. D. V. Burns* for the appellant.

*Mr. F. W. Viehe* for the appellee.

MR. JUSTICE MILLER delivered the opinion of the court.

There came into the hands of Niblack, as administrator *de bonis non* of the estate of Albert G. Sloo, the sum of $150,000, and the complainant is the owner of a judgment against said Sloo for $31,344.44, recovered in the Supreme Court of the State of New York, on the twentieth day of January, 1855. The purpose of the present bill is to follow this money in Niblack's hands as a trust fund devoted by Sloo in his lifetime to the payment of that judgment. This trust arises, if it exist at all, out of a deed of assignment made by Sloo of all his property, rights, and credits to Benjamin H. Cheever and James Wiles, of the date of Feb. 3, 1860, for the benefit of all his creditors, but with some preferences, among which is the judgment. The sum above mentioned was received by Niblack as the share of Sloo's estate in a claim of over a million dollars recovered in the Court of Claims against the United States and paid by the government to Marshall O. Roberts and Edward N. Dickerson, in whose names the judgment was recovered. The history of this claim, which is necessary to an understanding of the case in hand, is this : —

The fourth section of the act of Congress of March 3, 1847, chap. 62 (9 Stat. 187), directed the Secretary of the Navy to contract with Sloo for the transportation of the mails of the United States from New York to New Orleans, Charleston, Savannah, Havana, and Chagres and back twice a month, at a compensation not to exceed the sum of $290,000. The mail was to be carried in steam vessels of a character described in the act, not less than five in number, to be constructed under

the supervision of officers of the navy, in such manner as to be easily converted into war steamers of the first class. Under this authority the Secretary and Sloo executed a written contract on the 20th of April of that year, for the construction of the ships and transportation of the mails at the sum of $290,000 per annum. On the 17th of August thereafter Sloo entered into an agreement with Marshall O. Roberts, George Law, Prosper M. Wetmore, and Edwin Croswell, by which they were taken into this contract with him, and agreed to build the vessels, and run them, and perform the obligations of Sloo to the government. He was to receive one-half of the net profits of the venture and the four persons named the other half. In order to the perfect working of this agreement, a tripartite instrument in writing was made, in which Sloo is called the party of the first part, and Roberts, Law, Wetmore, and Croswell the party of the second part, and George Law, Marshall O. Roberts, and Berres R. McIlvaine party of the third part, whereby, after reciting the agreement between the party of the first part and the party of the second part, the contract of Sloo is assigned to the party of the third part as trustees for the due execution of the agreement. This was signed by all the persons named.

The ships were built, and the mails carried for many years. By death and substitution, Marshall O. Roberts and Edward N. Dickerson became the surviving trustees under the agreement, and, as such, recovered in a controversy with the United States in the Court of Claims judgment for the sum of $1,031,000 as money due under the original contract with Sloo, which judgment was affirmed in this court and the money paid to them.

In the mean time, Sloo, who had become insolvent, executed in 1860 the general assignment to Cheever and Wiles, already mentioned. He died before the final payment of the money by the government to Roberts and Dickerson. Niblack was appointed his administrator.

These facts are all set out in the bill, and copies of the several contracts and assignments are filed as exhibits. Another averment of the bill is that the sum really due to Cheever and Wiles, as assignees of Sloo, out of the sum paid

by the government, was $182,000; that Cheever and Wiles received $37,000 of this money, and consented to the payment of the remaining $145,000 to Niblack under some arrangement not understood by the complainant. It is also alleged that all the other indebtedness of Sloo which might have been a claim on this fund under his assignment to Cheever and Wiles has been paid, and there remains no other claim on it than complainant's. It is also averred that Wiles and Cheever are not citizens of Indiana, and cannot be served with process, and are not made parties to the bill, and for the reasons above stated are not necessary parties.

The demurrer is, first, general, and, secondly, special as regards the failure to make Cheever and Wiles parties.

The general demurrer is maintained on the ground that the assignments made by Sloo are void by reason of the provisions of sect. 3477 of the Revised Statutes. These provisions were enacted by Congress in 1853 (10 Stat. 170), and were, therefore, not in force when Sloo made his contract with the government, or his agreement with Roberts, Law, and others. That agreement remains unaffected by them. They were in force, however, when he made the general assignment of all his effects to Cheever and Wiles, and as the complainant claims through it, and can probably succeed only in that way (because, as we are informed, the State court of Indiana has decided that the Statute of Limitations bars his claim as an ordinary debt), we must inquire whether that assignment is void under the act of Congress.

The statute has several times within the last few years received the consideration of this court. *United States* v. *Gillis,* 95 U. S. 407; *Spofford* v. *Kirk,* 97 id. 484; *Erwin* v. *United States,* id. 392.

It is understood that the Circuit Court sustained the demurrer under pressure of the strong language of the opinion in *Spofford* v. *Kirk.* We do not think, however, that the circumstances of the present case bring it within the one then under consideration, or the principles there laid down. That was a case of the transfer or assignment of a part of a disputed claim, then in controversy, and it was clearly within all the mischiefs designed to be remedied by the statute. Those mis-

chiefs, as laid down in that opinion, and in the others referred
to, are mainly two : —

. *First,* The danger that the rights of the government might
be embarrassed by having to deal with several persons instead
of one, and by the introduction of a party who was a stranger
to the original transaction.

*Second,* That, by a transfer of such a claim against the gov-
ernment to one or more persons not originally interested in it,
the way might be conveniently opened to such improper influ-
ences in prosecuting the claim before the departments, the
courts, or the Congress, as desperate cases, when the reward is
contingent on success, so often suggest.

Both these considerations, as well as a careful examination of
the statute, leave no doubt that its sole purpose was to protect
the government, and not the parties to the assignment. *Erwin*
v. *United States (supra),* decided at the same term as *Spofford*
v. *Kirk,* is suggestive on this point. It was there held that the
claim of a bankrupt against the United States passed by the
assignment in the bankruptcy proceeding to his assignee, and
that the latter, and not the original claimant, was the proper
person to sue in the Court of Claims. " The passing of claims
to heirs, devisees, or assignees in bankruptcy is not within the
evil at which the statute aimed," said the court. The language
of the statute, " all transfers and assignments of any claim
upon the United States, or of any part thereof, or any interest
therein," is broad enough (if such were the purpose of Con-
gress) to include transfers by operation of law, or by will.
Yet we held it did not include a transfer by operation of
law, or in bankruptcy, and we said it did not include one
by will. The obvious reason of this is that there can be no
purpose in such cases to harass the government by multi-
plying the number of persons with whom it has to deal, nor
any danger of enlisting improper influences in advocacy of
the claim, and that the exigencies of the party who held it
justified and required the transfer that was made. In what
respect does the voluntary assignment for the benefit of his
creditors, which is made by an insolvent debtor *of all his
effects,* which must, if it be honest, include a claim against
the government, differ from the assignment which is made in

bankruptcy? There can here be no intent to bring improper means to bear in establishing the claim, and it is not perceived how the government can be embarrassed by such an assignment. The claim is not specifically mentioned, and is obviously included only for the just and proper purpose of appropriating the whole of his effects to the payment of all his debts. We cannot believe that such a meritorious act as this comes within the evil which Congress sought to suppress by the act of 1853.

It is also to be remarked that the government had recognized Sloo's original assignment of his contract to Roberts, Law, and McIlvaine, as trustees, by permitting them to perform the contract and receive the pay under it for years; and when a dispute arose as to the sum due under that contract, Congress, by the act of July 14, 1870, very fully recognized the validity of that transfer.

That act is in these words: —

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that the claim of the trustees of Albert G. Sloo, for compensation for services in conveying the United States mails by steamers, direct between New York and Chagres, in addition to the regular service required under the contract made between the said Albert G. Sloo and the United States be, and the same is hereby, referred to the Court of Claims; and the said court is hereby directed to examine the same, and determine and adjudge whether any, and if any, what, amount is due said trustees for said extra service, provided that the amount to be awarded by said court shall be upon the basis of the value of conveying other first-class freight of like quantity with the mails actually carried between the same points at the same time."

This is still further recognized by the appropriation to pay this judgment "to Marshall O. Roberts and E. N. Dickerson, surviving trustees of A. G. Sloo," found in chapter 3 of the Second Session of the Forty-fifth Congress. 20 Stat. 7.

The first agreement of Sloo, therefore, is unassailable.

His assignment to Cheever and Wiles, in 1860, conveyed only his interest in the profits of the contract which the parties in the first assignment were performing or had performed for the government.

The general assignment of Sloo, in 1860, gave Cheever and Wiles no right to assert a claim against the government. They could only deal with the trustees under the first assignment, and on them they had only the claim for net profits which came into their hands. Cheever and Wiles and the present complainant were neither of them capable of suing the United States in the Court of Claims, or of presenting the matter before the accounting officers of the government, and could give no valid or just acquittance to the government for any part of the claim.

We do not think the transfer to Cheever and Wiles, as trustees for Sloo's creditors, is forbidden by the act of 1853, or by any other principle of law or of public policy.

But we are of opinion that Cheever and Wiles are not only proper but necessary parties to this suit. The entire sum to which the estate of Sloo could possibly be entitled was assigned to them. The trust on which it was assigned remains unexecuted. They are charged with having received $37,000 of that fund. What have they done with it?

If, as alleged in the bill, there are no other debts of Sloo secured by the assignment, this sum in their hands should be accounted for before a decree is rendered against his administrator. They are charged with consenting to the payment to the administrator of the fund now sought in this suit. There may have been good reasons for it, and if not, they may be personally liable for it. The fund can only be subjected to the complainant's debt through these trustees. It is only in right of the assignment to them that he proceeds. They are living, and cannot be divested of this trust by any decree to which they are not parties. The administrator has a right, if a decree is rendered against him, to have it made effectual against them.

Notwithstanding the allegation of the bill that all the liabilities of the trust fund except the complainant's debt have been discharged, this may not be so; and it may be in the power of these trustees, and it may be their duty, if made parties to this suit, to show that there are others entitled to share in it. No decree against that fund can rightfully be made while they are not before the court.

This, however, need not defeat the jurisdiction of the court if the bill is amended by making them defendants.

This is a proceeding in equity to enforce a lien on the fund which is within reach of the court, and as the trustees and complainant have the requisite citizenship, sect. 738 of the Revised Statutes provides a remedy for inability to serve process by an order of publication. If they appear, the suit will proceed as usual. If they do not appear, the decree, so far as it affects the fund in the hands of Niblack, will bind them; and this is all that is necessary to give the court jurisdiction to grant the relief prayed for by the complainant.

If the decree of the Circuit Court had dismissed the case without prejudice for want of proper parties, we should have been bound to affirm it. But standing as it does now, it is a decision on the merits of the case and a bar to any other suit. It must, therefore, be reversed and remanded to that court. If the complainant shall ask leave to amend his bill by making Cheever and Wiles defendants, he should be permitted to do so and proceed with his case. If he does not do this, a decree should be entered dismissing the bill for want of these parties and without prejudice to any other suit on the merits. *Shields* v. *Barrow*, 17 How. 130; *Barney* v. *Baltimore City*, 6 Wall. 280; *House* v. *Mullen*, 22 id. 42; *Kendig* v. *Dean*, 97 U. S. 423.

The decree will be reversed, and the cause remanded for further proceedings in conformity with this opinion; and it is

*So ordered.*