ANSON E. YORK AND WALLACE W. STARKWEATHER, RESPONDENTS, v. WILLIAM W. CONDE AND JOHN C. STREETER, APPELLANTS.

*Assignment of a claim against the United States — U. S. Rev. Stat., sec. 3477 — money to be received on the completion of a government contract — priority among assignments — marshaling of securities — evidence of offer of compromise.*

Section 3477 of the United States Revised Statutes, prohibiting the transfer or assignment of a claim, or any part thereof, upon the United States, does not apply to an assignment by a contractor with the United States of a specified amount of the moneys to be paid him, on the completion of his contract, to a person to whom he is indebted for materials furnished to and used by him in the execution of his contract, so as to prevent such assignee from recovering the sum so assigned from a third party who, with knowledge of such assignment, and without any agreement with the contractor prior to such assignment, had received from the contractor the draft given to him by the disbursing officer of the government on the completion of his contract, and had applied a portion of the proceeds thereof to the payment of a claim of his own against the contractor, and had paid over the balance to the contractor.

Decisions of the United States Supreme Court on the effect and application of section 3477 of the United States Revised Statutes, examined and commented on.

On the trial of an action by the assignee, under said assignment, against said third party to recover the proceeds of the draft given to the contractor by the government on the completion of his contract, it appeared that the defendant had received mortgage security for his claim against the contractor, but had not realized thereon at the time the draft was paid.

The trial judge charged the jury that the equitable doctrine applied as against the defendant; that a party having a lien upon two funds must, upon the application of a party having a lien upon one of them, exhaust his remedy on the other security first.

*Held,* that this was erroneous.

That such instruction tended to lead the jury away from the true question for decision, which was whether the defendant had an agreement with the contractor, as to the disposition of the moneys to be received from the government, prior to the assignment to the plaintiff, and that the right of the plaintiff in respect to such mortgage security could not be determined in that action.

*Held*, also, that it was improper to refuse to charge that if the jury found that there was an equitable lien or assignment in favor of the defendants prior to the assignment to the plaintiff, to the extent of the whole amount of the draft received by the contractor, and the draft came rightfully to the hands of the defendants, it was immaterial to plaintiff what use it was put to.

An exception to evidence of an offer of compromise is well taken where such evidence is immaterial, and, the case being a close one, such evidence may have had an improper effect on the jury.

APPEAL by the defendants, William W. Conde and John C. Streeter, from a judgment of the Supreme Court, entered in the Jefferson county clerk's office December 24, 1891, upon a verdict rendered at the Jefferson Circuit in favor of the plaintiffs for $2,737.50; also an appeal by the defendant, William W. Conde, from an order denying a motion made on the minutes for a new trial.

*Brown & Adams*, for the appellant, Conde.

*Watson M. Rogers*, for the appellant, Streeter.

*Henry Purcell*, for the respondents.

MERWIN, J.:

In the fall of 1889 the firm of Witherby & Gaffney entered into a contract with the United States government for the construction of certain buildings at Madison barracks, at Sacketts Harbor; and thereafter they purchased of the plaintiffs materials for use in the erection of said buildings to such an extent that on the 27th of March, 1890, they were indebted to the plaintiffs thereon in the sum of $3,000. At that date they executed and delivered to plaintiffs an instrument in writing which, after reciting the indebtedness, and that there would be due and payable to them from the government considerable sums of money before and on the completion of the work, proceeded as follows: " Now, therefore, of the moneys due and to become due us from the said government we do hereby, for value received, assign and transfer to said York & Starkweather the sum of three thousand dollars, and do hereby authorize, empower, request and direct Lieut. J. E. Macklin, R. Q. M., Eleventh Infantry,

U. S. A., through whom payments are made for such construction, to pay to said York & Starkweather on our account for such construction the full sum of three thousand dollars as follows: First, $500 from the next estimate and payment due or to become due us, and the sum of $2,500 on the completion of said work by us, and when the balance of our contract with the government becomes due and payable to us."

On the 12th of May, 1890, Witherby & Gaffney completed the work, and on the fourteenth of May the agent of the government delivered to them a draft for $4,428, that being the balance due. This was payable to their order, and they, upon the same day, indorsed and delivered it to the defendants, who, upon the following day, obtained the money thereon. The plaintiffs have received upon their debt $500. The balance of $2,500 and interest they seek to recover in this action. They claim that they were the owners of the proceeds of the draft to the extent of such balance, and that defendants, when they received the draft, had notice of their claim. The defendants concede that they had notice of plaintiffs' claim, but they insist that the instrument under which plaintiffs make their claim is void under section 3477 of the Revised Statutes of the United States; and also that, prior to its date, there was a verbal agreement between the defendants and Witherby & Gaffney, by which the latter, in consideration that the defendants would indorse their paper and enable them to raise money to carry on the work, agreed that such paper should be paid from the moneys to become due on the contract, and that they would turn over to defendants the check or draft which they should receive upon the final settlement, so that the defendants might be fully paid for what they indorsed for them or furnished them. Whether there was such an agreement was a question of fact for the jury to determine under the ruling of this court upon a former appeal. (See 61 Hun, 26.)

Upon the trial under review, it appeared that at the time the defendants received the draft they were liable, as indorsers for Witherby & Gaffney, to the amount of $4,900, of which $4,200 existed prior to March 27, 1890. Witherby & Gaffney were also indebted to the defendant Conde, individually, in the sum of $450, of which $205 was incurred after March 27, 1890, and they were also indebted to the defendant Streeter, individually, $350, and there is

evidence that none of this accrued after March 27, 1890. These individual accounts were for moneys or supplies furnished to Witherby & Gaffney in connection with the work. It also appears that the defendants, in disposing of the proceeds of the draft, applied $3,200 in payment of notes, $250 on the individual account of Conde, $350 on the individual account of Streeter, and the balance of $628 they returned to Witherby & Gaffney. The court held that the United States Statute did not apply, and charged that the plaintiffs were entitled, as matter of law, to recover the sum of $1,183, being the items of $628 and $350 above named, and also $205 of the item of $250. As to the balance of the plaintiffs' claim, its recovery, as the court charged, depended on whether the jury found an oral agreement, as claimed by defendants, prior to plaintiffs' agreement. The verdict was for plaintiffs for the full amount, thus negativing the existence of any prior oral agreement with defendants.

By section 3477 of the United States Revised Statutes, it is provided that "all transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders or other authorities for receiving payment of any such claim, or of any part or share thereof, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertaiment of the amount due, and the issuing of a warrant for the payment thereof." The defendants, in support of their contention that this statute applies here and strikes down the instrument upon which plaintiffs base their rights, rely mainly on the case of *Spofford* v. *Kirk* (97 U. S., 484). In that case, Kirk employed Hosmer to prosecute for him a claim against the United States for supplies furnished to the army during the late war, and for damages sustained by reason of the military occupation of his property. Before the allowance of the claim, he drew, in favor of Wharton, an order on Hosmer for a certain amount payable out of any moneys coming into his hands on account of the claim. Hosmer accepted the order, and Spofford became its holder in good faith. An award was afterwards made to Kirk, and a warrant issued in his favor. The latter then refused to recognize

the validity of the order, or indorse the warrant in the hands of Hosmer. Spofford then filed a bill against Kirk and Hosmer to enforce compliance with the order. It was held that the accepted order was void, and gave the holder no interest in the claim against the United States, and no lien upon the fund arising out of the claim, although, in the absence of the statute, there would be an equitable assignment *pro tanto*. It was said that such an order was not only invalid when set up against the government, but also as between the parties.

It is, however, claimed by the plaintiffs that subsequent adjudications in the same court have materially modified the rule laid down in the Spofford case. In *Goodman* v. *Niblack* (102 U. S., 556), it was held that the statute did not apply to a transfer by means of a general assignment for the benefit of creditors. It also seems to have been held that in case the government recognized the validity of such an agreement, the parties to it, or those claiming under them, would be precluded from setting up that the contract was not assignable. And it was said of the Spofford case, that it was a case of the transfer or assignment of a part of a disputed claim then in controversy, and it was clearly within all the mischiefs designed to be remedied by the statute, and that a consideration of those mis chiefs, as well as a careful examination of the statute, " leave no doubt that its sole purpose was to protect the government, and not the parties to the assignment." In *Hobbs* v. *McLean* (117 U. S., 567) one Peck, having put in a bid for a contract which he expected to, and did afterwards receive, made an agreement with other parties by which, in consideration of moneys to be advanced and services performed by them, he agreed to divide with them a fund he expected to receive from the government on the contract. This agreement was held not to be affected by the statute, and was enforced against the fund in the hands of the assignee of the contractor, and it was said that the purpose of the statute "was not to dictate to the contractor what he should do with the money received on his contract after the contract had been performed." In *Freedman's Saving Company* v. *Shepherd* (127 U. S., 494) it was held that the statute did not apply to the assignment of a lease and the rents to become due thereunder from the government, and the government having recognized the assignment and paid the rent to

the assignee, it was held that the other parties could not complain, and that the provisions made in the assignment for the application of the rents should be carried out.

In the light of these cases, the ruling of the court below on this subject should not I think be disturbed. In the course of the trial it appeared that on the 26th of March, 1890, the defendants received from the wife of Gaffney as collateral security for their indorsements a mortgage upon two houses owned by her; that afterwards they foreclosed the mortgage and bid in the property, and had since then realized from the sale of one of the houses $800 which they had applied on the balance remaining of the $4,900 indorsements; that they still held the other house which was incumbered by a mortgage of $700, and was worth $1,500 to $1,600. The court in its charge having referred to the equitable doctrine that a party having a lien upon two funds will, upon the application of a party having a lien upon one of them, be compelled to exhaust his remedy on the other security in the first instance, the defendants' counsel asked the court to charge that that doctrine had nothing to do with this case. To this the court replied: " Well, I can't say that. It is broad enough to engraft upon every case in order to do justice between the parties where the question arises." The defendants duly excepted. This exception was, I think, a good one. The jury were permitted to infer that the right of the defendants to receive the proceeds of the draft at the time they did receive them was diminished or affected by the fact that the defendants then held other security which had not since then been fully exhausted, or that defendants had no right to the proceeds of the draft until such exhaustion. This would naturally lead the jury away from the true question for them to decide which was, whether the agreement with the defendants was prior to that with the plaintiffs. If it was it was not affected or diminished by the fact that when the draft was received the defendants had other security. The rights of the plaintiffs in respect to such security cannot be determined in this action. Nothing had been realized therefrom at the time the draft was paid.

The court charged that the plaintiffs in any event could recover the sum of $628, which the defendants, after they received the

proceeds of the draft, paid back to Gaffney, and declined to charge that if the jury found that there was a prior equitable lien or assignment in favor of defendants to the extent of the whole $4,400 in the check or draft, and it came rightfully to the hands of defendants, it was immaterial to plaintiffs what use it was put to. This should have been charged, for if the defendants had a lien to the full amount they were entitled to receive the whole, and that would necessarily exclude the right of plaintiffs to recover any part of it in this action. Whether the defendants, after they gave back a portion of the fund, could still hold for the same amount other security which they may have had, is a question that does not here arise. Upon that question the plaintiffs have a full remedy elsewhere.

The court also charged that the plaintiffs were in any event entitled to recover $205 of the amount allowed upon the individual debt to Conde. The full amount of his debt was $450. Of this $205 was incurred after the date of the agreement with plaintiffs. The $250 was applied generally upon the account. There was evidence tending to show that the agreement between defendants and Witherby & Gaffney covered the individual account of Conde as well as the indorsements. If so, I fail to see how, as matter of law, it should be said that plaintiffs could recover the $205. Exception was duly taken to the charge and refusal to charge above referred to.

The plaintiff York, being upon the stand as a witness in his own behalf, was allowed to testify what he told the defendant Conde that he would take rather than have any suit about it, in other words, his offer of compromise. Objection and exception were duly taken. This was immaterial, and in a close case might have an improper effect upon a jury.

It follows that there should be a new trial.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment and order reversed upon the exceptions and new trial ordered, with costs to abide the event.