## UNITED STATES v. JORDAN et al.

### No. 10988.

United States Court of Appeals
Sixth Circuit.

Feb. 6, 1951.

804

Harold S. Harrison, Washington, D. C. (A. Devitt Vanech, Asst. Atty. Gen., Roger P. Marquis, and Harold S. Harrison, Washington, D. C., John Brown, Edward N. Vaden, Memphis, Tenn., on the brief), for appellant.

John D. Martin, Jr., Memphis, Tenn. (John D. Martin, Jr., John Costen, Memphis, Tenn., on the brief; Sam Costen, Memphis, Tenn., E. T. Palmer, Dyersburg, Tenn., James T. Haynes, and C. S. Carney, Jr., Ripley, Tenn., W. N. Beasley, Halls, Tenn., of counsel), for appellees.

Before SIMONS, McALLISTER and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The United States appeals from a judgment which allowed the appellees separate recoveries for damages to timber located on tracts of land owned by them and used by the Army in connection with the operation of an air to ground gunnery range near Dyersburg, Tennessee.

On June 15, 1944, the United States instituted proceedings to condemn the temporary use of approximately 7,800 acres of land in Lauderdale County, Tennessee, for use in connection with the expansion of the Dyersburg Army Air Base, Air to Ground Gunnery Range. On the same day, the court entered an order of possession. Thereafter, the Army procured voluntary leases from some of the landowners involved and their tracts were dismissed from the proceedings. Following use of the property as an air to ground gunnery range, the Government in 1945 and 1946 surrendered possession to the landowners. In the condemnation suit the Government secured from the landowner at the time an agreement stipulating the fair rental value of the leasehold estate, and by which the landowner agreed to accept said sum in full and complete satisfaction for the land for said period, and in consideration of the sum so paid, released the United States for any and all claims for damages. Judgments were entered upon the stipulations and releases so executed. Following distribution of the funds in court to the landowners entitled thereto, an order closing the case was entered on March 12, 1947. In the negotiated leases, releases were also taken from the landowners upon surrender of possession, under which the landowner, for a consideration of "One Dollar and other valuable considerations" released the United States from all claims, excepting unpaid rent, arising out of the lease and occupation of the land.

On November 25, 1947, the appellees, being the owners of some twenty tracts so held and used by the Government, under both negotiated leases and through condemnation proceedings, filed this action in the district court under the Tucker Act, [28 U.S.Code, § 41(20) [1] at that time] to recover damages to the timber thereon resulting from the fact that steel jacketed bullets were lodged in the standing timber to such an extent that it was rendered valueless. Following a trial before the court without a jury, the District Judge made findings of fact and conclusions of law upholding the claims of the appellees. He set aside the releases and stipulations between the parties on the ground that they were executed through mutual mistake of fact, because at the time they were agreed to the parties were ignorant of the fact that the standing timber had been rendered valueless by machine gun bullets. He vacated the judgments entered on the stipulations on the ground that they were manifestly unconscionable. He ruled that the claimants were entitled, in addition to the rental value and crop damage paid, to recover just compensation for the taking of their growing timber under the Fifth Amendment of the Constitution of the United States. Separate awards in favor of the respective claimants, computed on the basis of $12.50 per 1,000 board feet for the standing timber 12 inches and up, and the sum of $8.00 per 1,000 board feet for the standing timber 8 inches to 12 inches, were included in the judgment, which also allowed interest on each award from the date of the filing of the condemnation proceeding and the entry of the order of possession on June 15, 1944.

The Government contends that the District Judge had no jurisdiction to vacate the judgments entered in the condemnation proceeding, because (1) the present proceeding is a collateral attack on such judgments, Rooker v. Fidelity Trust Co., 263 U.S. 413, 415–416, 44 S.Ct. 149, 68 L. Ed. 362; Union Land Bank v. Byerly, 310 U.S. 1, 7–8, 60 S.Ct. 773, 84 L.Ed. 1041, and (2) because the term of court in which they were entered had expired. Bronson v. Schulten, 104 U.S. 410, 415, 26 L.Ed. 797; E. C. Shevlin Co. v. United States, 9 Cir., 146 F.2d 613, 616. Such is the general rule, as shown by the cases cited. However, an apparent final judgment is not necessarily immune from attack, even after term, where equitable considerations require appropriate equitable relief. Julian v. Central Trust Co., 193 U.S. 93, 24 S.Ct. 399, 48 L. Ed. 629; Simon v. Southern Ry. Co., 236 U.S. 115, 35 S.Ct. 255, 59 L.Ed. 492; Ballard & Ballard Co. v. Munson S. S. Line, 6 Cir., 25 F.2d 252. And it has long been

1. 1948 Revised Judicial Code, 28 U.S.C.A. § 1346.

a recognized exception to the general rule that under certain circumstances, such as where it was manifestly unconscionable for a successful adversary to enforce a judgment in his favor, relief will be granted by a court of equity against such a judgment, regardless of the expiration of the term of its entry. Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. 238, 64 S.Ct. 1281, 88 L.Ed. 1596; Taylor v. Nashville & Chattanooga Railroad Co., 86 Tenn. 228, 6 S.W. 393. See also Pickford v. Talbott, 225 U.S. 651, 657–658, 32 S.Ct. 687, 56 L. Ed. 1240; E. C. Shevlin Co. v. United States, supra, 146 F.2d at page 615. We conclude that jurisdiction in the district court existed in the present case to vacate and set aside the judgments in the condemnation suit upon a showing of such equitable considerations as would justify such relief.

■ The Government also contends that since the leasehold interests were acquired for use as an air to ground gunnery range, the normal use of the property for such purpose would cause damage to the standing timber thereon, for which it should not be liable beyond the rental paid for the property. The District Judge found that under the express or implied covenants in the negotiated leases, and in the stipulations in the suit for condemnation, the appellees were entitled to recover damages to their standing timber in addition to the rental value paid, or were entitled under the facts in this case, in addition to the rental value paid, to recover just compensation for the taking of their growing timber under the Fifth Amendment to the Constitution of the United States. We are of the opinion that the evidence sustains these findings and conclusions. In the negotiated leases three different lease forms were used. By the provisions of one form, the Government agreed to return the premises in as good condition as that existing at the time of entering upon the same, reasonable and ordinary wear and tear excepted. Another form provided that at such times as the Government destroyed timber from an area in excess of one acre the parties would have a survey and timber cruise made for the purpose of determining the value of the timber destroyed and the Government would reimburse the lessor in the amount of the value of such timber destroyed. A third form provided that the rental payment agreed upon "does not include compensation for damages, if any, resulting from the use of the premises for the purposes leased; and that upon the termination of the lease, damages, if any, will be determined and payment therefor accomplished by supplemental agreement." Even in the absence of an express covenant, as was the situation in the condemnation suit, there is an implied obligation on the part of the lessee to treat the property leased in such manner that no injury be done to the inheritance, and to return the property to the lessor in as good condition as is received, ordinary wear and tear excepted. United States v. Bostwick, 94 U.S. 53, 65–66, 24 L.Ed. 65; Campbell v. W. M. Ritter Lumber Co., 140 Ky. 312, 315, 131 S.W. 20. The Government agent, J. C. Tainter, who negotiated the leases, testified that the negotiations were based on a straight land rental plus the growing crop value, and that when releases were being subsequently procured, if there was a probability of timber damage to the tract, they endeavored to put in the body of the release an exception and reservation of a claim for damages along those lines. The extremely low rental which was paid, in some instances as low as fifty cents an acre, strongly supports the ruling that timber damage was not included in the rental figure.

■ In our opinion, the finding of the District Judge that the releases and stipulations were executed through mutual mistake of fact is not clearly erroneous and is accordingly accepted. The evidence showed that the landowners had contacted their Congressman about getting back on the land, and the main purpose of the releases was to put the landowner back in possession and to stop the payment of rent. The Government contended, and still contends, that any damage to timber was localized in the target areas. The landowners were not in possession, and, except for a possible permit to go upon their property at certain designated times when firing was not going on, had no opportunity to ascertain if any

damage had been done to the timber. They testified that such widespread damage to the timber was unknown to them. In the tracts subject to condemnation the stipulations fixed "the fair rental value of the leasehold estate" and the landowner stated his willingness "to accept said sum in full and complete satisfaction for said rent for said period." No additional consideration was given for the added release. In the negotiated releases the purported consideration was "One Dollar and other valuable considerations," which apparently was rarely, if ever, actually paid. This lack of consideration, considered particularly in the light of the substantial damage actually suffered and later ascertained, is very convincing evidence that the parties did not have at the time information about any material damage to the standing timber. The releases and stipulations, together with the judgments entered on the stipulations, were properly set aside as being based on a mutual mistake of fact. Thompson, Trustee v. Camp, Adm'x, 6 Cir., 163 F.2d 396; Callen v. Penn. R. R. Co., 332 U.S. 625, 68 S.Ct. 296, 92 L.Ed. 242. See: Metropolitan Life Ins. Co. v. Humphrey, 167 Tenn. 421, 70 S.W.2d 361.

■■■ The District Judge found as a fact that millions of steel jacketed, 50 caliber, machine gun bullets were fired at targets located roughly in the northwestern and southern sections of the range and scattered throughout each of these tracts, with the result that steel jacketed bullets were lodged in the standing timber to such extent that all of it was rendered valueless and unmerchantable. This finding is supported by the evidence, is not clearly erroneous, and must be accepted on this review. As shown by the testimony of Barton Tully, R. E. Miller, W. H. Bailey and Alvin Wunderlich, the existence of steel jacketed machine gun bullets in standing timber in any particular area, even though in small and scattered amounts, presents a very material hazard to any sawmill operator interested in the purchase of such timber. A concealed steel jacketed bullet will, in many instances, materially damage or ruin expensive sawmill equipment, and in some instances cause severe personal injuries to the employees engaged in the sawmill operations. Following such damage, the sawmill may have to close down, but with continuing payrolls, pending repairs. The reasonable probability of such hidden danger may be sufficient to render timber unmerchantable. The bullets, in the present case, were not restricted to the immediate area of the targets, but were lodged in trees throughout the entire range. Such damage to or destruction of the standing timber imposed an obligation upon the Government under the Fifth Amendment to the Constitution of the United States to make payment to the lessor for the value thereof, in addition to its obligation for the rental value of the property so leased. United States v. General Motors Corp., 323 U.S. 373, 383–384, 65 S.Ct. 357, 89 L.Ed. 311; Kimball Laundry Co. v. United States, 338 U.S. 1, 7, 69 S.Ct. 1434, 93 L.Ed. 1765. The Government concedes that the amounts of $8.00 and $12.50 per 1,000 board feet, as found by the District Judge, are within the range of the testimony.

■■■ The Government contests the allowance of interest on the awards. Where the compensation to be paid by the Government is fixed by contract between the parties, which contains no provision for the payment of interest, no interest runs against the Government even though the Government's payment be delayed. Albrecht v. United States, 329 U.S. 599, 67 S. Ct. 606, 91 L.Ed 532. In the present case, the rental value was agreed upon, but the additional taking through damage to the standing timber was not settled by contract. The awards under such circumstances properly carried interest from the date of taking as a proper element in determining just compensation. Seaboard Air Line Ry. Co. v. United States, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664; Jacobs v. United States, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142; United States v. Klamath Indians, 304 U.S. 119, 123, 58 S.Ct. 799, 82 L.Ed. 1219.

■■■ Two of the claimants, E. M. Steelman, Jr. and Robert C. Steelman, purchased their respective tracts of land from former owners and lessors after the termination

of the Government's leaseholds, without knowledge that the value of the timber had been destroyed. Upon later discovery of the damage, the former owners executed assignments to the purchasers by which they assigned any and all claims against the Government "arising out of express or implied covenants in the aforesaid lease." The Government contends that the assignments are contrary to the provisions of the anti-assignment statute, 31 U.S.C.A. § 203, and that the assignees are barred from prosecuting their respective claims herein. United States v. Gillis, 95 U.S. 407, 24 L. Ed. 503. There are numerous exceptions to the literal wording of the statute. Goodman v. Niblack, 102 U.S. 556, 559–561, 26 L.Ed. 229; Erwin v. United States, 97 U.S. 392, 397, 24 L.Ed. 1065; Seaboard Air Line Ry. v. United States, 256 U.S. 655, 41 S.Ct. 611, 65 L.Ed. 1149; Western Pacific R. R. Co. v. United States, 268 U.S. 271, 45 S.Ct. 503, 69 L.Ed. 951; Old Colony Ins. Co. v. United States, 6 Cir., 168 F.2d 931, 934; United States v. South Carolina State Highway Dept., 4 Cir., 171 F.2d 893, 899. In the present case, the leases with the former owners ran in favor of the owners, their heirs, "successors and assigns." The claims here asserted arise out of these leases containing the express or implied covenants, as found by the trial judge, entitling the owners and their assigns to recover damages to the standing timber in addition to the rental value paid. The subsequent written assignments were incidental to the prior sale of the land, and in furtherance of the vendor's obligations under their deeds of conveyance. The purposes of the statute were in no way violated. Goodman v. Niblack, supra, 102 U.S. at page 560. We agree with the ruling of the District Judge.

■ The Government contends that the awards for Tracts 17 and 17a erroneously included timber of 12 inches and over that had been sold by the landowner to W. H. Bailey after the Government surrendered possession. But the record indicates that the figures used in computing the awards were based on the testimony of Ned E. Mason, timber cruiser for the Government, who made a recheck of his figures on August 16, 1946, which was subsequent to the sales to Bailey. Similar contentions are made by the Government with respect to Tracts 5, 16 and 23. Sales of timber from these tracts were not closed transactions in view of the buyer's later discovery of the hidden defects rendering the timber purchased valueless. What, if any, credit the Government would be entitled to by reason of such sales, with the very probable kick-backs involved, is not definitely enough indicated by the record to cause a modification of these awards. We do not find in the record that this question was called to the attention of the District Judge.

The judgment is affirmed.