**STANDARD LIME AND CEMENT COMPANY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 77-597.**

United States District Court, W. D. Michigan, S. D.

Nov. 3, 1980.

Dennis I. Meyer, Baker & McKenzie, Washington, D. C., for plaintiff.

Donald A. Davis, Asst. U. S. Atty., James S. Brady, U. S. Atty., Detroit, Mich., Steven Z. Kaplan, Trial Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendant.

## OPINION

ENSLEN, District Judge.

In this action the Plaintiff seeks a refund for taxes paid during the period 1955 to 1959. Plaintiff contends that it was entitled to compute its depletion allowance deduction upon the basis of its income from magnesium hydroxide, rather than from its brine. At the time of the allegedly erroneous payments of income tax, Plaintiff was a wholly owned subsidiary of American–Marietta. In 1959, the parent company decided that it would be desirable to liquidate the Plaintiff and operate its assets as a division. Although the directors approved a plan of liquidation on November 30, 1959, the Plaintiff was never dissolved, and there is some uncertainty whether the entire plan of liquidation was executed.

This action is currently before the Court on Defendant's Motion to Dismiss which is based on the premise that venue is improper. There are two facets to this venue argument. Defendant contends that the Plaintiff assigned its interest in the tax refund claim to its parent, American–Marietta, upon liquidation and that the Plaintiff is not the real party in interest. Defendant further argues that even if no assignment is found, that venue should not be in this Court because the Plaintiff does not have a principal place of business or principal office or agency within this jurisdiction. The decision of this Court, with respect to the real party in interest issue, makes it unnecessary to reach the second part of the argument forwarded by the Defendant.

Federal Rule of Civil Procedure 17 requires that: "Every action shall be prosecuted in the name of the real party in interest . . ." The meaning of such a requirement is explained in *Moore's*, Federal Practice, 17.09(1) at 17–82:

> The primary purpose of the real party in interest provision was to change the common law rule that an action upon an assigned chose in action had to be prosecuted in the name of the assignor . . . a suit on the assigned chose in action must be brought in the name of the transferee.

FRCP 17 also provides that: "such ratification, joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." Therefore if this Court determines that the tax refund claim had been effectively assigned by Plaintiff to American–Marietta, this corporation would have to be substituted for Standard Lime and Cement, and venue decided accordingly.

At the time American–Marietta decided to operate the Plaintiff as a division, instead of a wholly owned subsidiary, it acted with two, potentially conflicting objectives in mind. One; it wanted to act in such a manner as to take advantage of a tax–free reorganization privilege under Internal Revenue Code § 332. Two; it desired to

avoid adverse consequences under the Assignment of Claims Act, 31 U.S.C. § 203. The assignment of Claims Act requires certain procedures to be followed if the assignee is to be able to assert his claims against the United States. Those persons responsible for planning the corporate restructuring were uncertain if the liquidation plan would be exempted from the strictures of the Claims Act. The problem was compounded by the tax rule in § 332 which permits a corporation to completely liquidate a subsidiary and receive a distribution of the subsidiary's property without recognizing any gain or loss. In order to comply with § 332 both tangible and intangible property must be transferred to the parent corporation, but the subsidiary need not be dissolved, *Treasury Regulations* 1.332–2(c). The difficulty presented was the potential consequence of invalidation of the assignment by the United States. If the attempted transfer of the tax refund claim were voided, then the parent company might be denied benefits of a tax free reorganization under § 332.

To allay such discomfiture, William R. Stead, Assistant Counsel to American–Marietta, wrote to the District Director of the Internal Revenue requesting a ruling (Ex F). The position of American–Marietta was further elucidated in a letter to Mr. Paschall, Chief of Reorganization and Dividend Branch, in which it was stated:

> In any event it should be noted that upon completion of the enclosed Plan of Liquidation (Exhibit 3) Standard will retain only the bare legal title to so much of the claims for refund of federal taxes as is invalidated by the Assignment of Claims Act. The total beneficial interest in such claims will rest in American–Marietta. Title to all other assets of Standard will have been transferred to American–Marietta ... (Ex G)

In response to such queries the Director of Tax Rulings Division issued a letter stating that the "transaction would qualify as a complete liquidation of a subsidiary within the purview of § 332"; such decision being expressly based on the assumption that:

Standard will continue in existence after the transfer of its assets, retaining only bare legal title to so much of the claims for refund as are not assignable under the Assignment of Claims Act. (Ex H)

Defendant does not deny that it intended to assign the tax refund claim to American–Marietta as of the date of the above communication, nor does it deny that it availed itself of § 332 of the IRC for tax free treatment; but it now denies that a transfer of the claim was actually made. As one argument, Plaintiff states that even were such transfer attempted, it would have been rendered null and void by the Assignment of Claims Act. Such an argument ignores the line of cases that hold that corporate restructuring does not generally fall within the purview of the Claims Act as noted by *Moore, supra,* 17.09(1.–2) at 17–103:

> Merger of a corporation holding a claim against the United States with another corporation is not an assignment within this statute, *Seaboard Air Line Ry. v. United States* (1921) 256 U.S. 655, 41 S.Ct. 611, 65 L.Ed. 1149; nor is a transfer of stock by a stockholder or a corporation holding a claim *Kellogg Bridge Co. v. United States* (1879) 15 Ct. Claims 111; nor are assignments to shareholders in dissolution of a closely held corporation, *United States v. Improved Premises* (S.D. N.Y.1962) 294 [204] F.Supp. 868.

Furthermore the cases bandied about by Plaintiff (and Defendant) do not include the case of *Roomberg v. United States,* 40 F.Supp. 621 (E.D.Penn.1941), which involved substantially the same situation as the case at bar. In *Roomberg* the plaintiff also was the sole stockholder of the corporation, and he acquired its assets and assumed its liabilities at the time he surrendered its capital stock. Similarly, thereafter, the corporation ceased doing business. In holding that the Assignment of Claims Act was no bar to the effective transfer of the claim for tax refund the Court stated:

> The assignment only passed legal title to parties who already owned the entire beneficial interest in the claim. Such an

assignment is not within the evils at which the prohibitions of the statute are directed. *Id.* at 623.

Plaintiff's position regarding the invalidating effect of Assignment of Claims Act is further undermined when one recognizes the intended beneficiary of this Act. *Moore's, supra* explains the significance of this intent in the following manner:

It has been several times declared by this court that the statute was intended solely for the protection of the government and its officers during the adjustment of claims, and that, after allowance, the protection may be invoked or waived, as they, in their judgment deem proper. *Goodman v. Niblack,* (1880) 102 U.S. 556, 26 L.Ed. 229 ... The statute is in the nature of a statute of frauds. *Buffalo, B.B. & C.R.R. v. United States* (1880) 16 Ct. Claims 238.

While it appears to the Court that an assignment may have been effectively accomplished, the Plaintiff raises the further argument that none was attempted. Plaintiff states that the assignment contemplated, in the communications of the IRS, was not carried out. Plaintiff acknowledges the use of § 332, but states that this tax rule only requires the transfer of substantially all of the subsidiary's assets. In this vein the Plaintiff appears to be arguing one of two equally implausible positions: either that a claim for $340,509.52 is not substantial, or that all choses in action are insubstantial because of their contingent nature. Both positions are deemed untenable.

Assuming, arguendo, that § 332 could not have been rightfully invoked, Plaintiff urges the Court not to confuse local law with tax law. It is, of course, true that the Plaintiff and American–Marietta could alternatively claim assignment in one context and absence of assignment in another. The Court is not, however, without legal instruments to counter such disingenuous behavior. In other settings, where liability has been in issue, rather than ownership of an asset, the judicial doctrine of "piercing the corporate veil" has developed. In such cases the courts have looked behind the fiction of corporate existence, and held the shareholders liable where such a result is necessary to avoid injustice. This principal was recently affirmed by the Supreme Court in *Bangor Punta Operations v. Bangor & A.R. Company,* 417 U.S. 703, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1974) when it stated:

Although a corporation and its shareholders are deemed separate entities for most purposes, the corporate form may be disregarded in the interests of justice where it is used to defeat an overwhelming public policy ... In such cases, courts of equity, piercing all fictions and disguises will deal with the substance of the action and not blindly adhere to the corporate form. *Id.* 417 U.S. 713, 94 S.Ct. at 2584.

While a court should be hesitant to ignore the corporate form which is commonly relied upon, the Court in this instance is not contemplating a thoroughgoing destruction of the fiction. Rather than "piercing the corporate veil", the Court intends only to tailor the cloth to suit the form. New liability will not be imposed upon the shareholders, nor will a corporation be totally denied a cause of action. Instead, this Court merely finds that the appropriate person to bring the suit for refund is the corporation that undeniably possesses the complete beneficial interest in the tax refund and has represented to others that it possessed the entire interest.

This Court is guided by the reasoning of a Maryland District Court, in *Call Carl, Inc. v. BP Oil Corporation,* 391 F.Supp. 367 (1975) aff'd 554 F.2d 623 (4th Cir.), cert. den. 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed.2d 280, where it was stated:

Notwithstanding the fact that the parent may own all of a subsidiary's stock, and interlocking directorships may exist between the two corporations, it is axiomatic that if a subsidiary maintains its own books and accounts, and makes its own marketing, purchasing, management and other policy decisions, it cannot be held to be acting as an agent of the parent. *Hayashi v. Sunshine Garden Prod.,* 285 F.Supp. 632, 634 (W.D.Wash.1967).

Of course a precise determination as to when a subsidiary stops being a separate legal entity and when it becomes an alter ego of the parent is impossible. The test of venue turns on the facts of each case; generalizations are, for the most part, impossible, *United States v. Scophony Corp.*, 333 U.S. 795, 816–17, 68 S.Ct. 855, 92 L.Ed. 1091 (1948).

While the conclusion that the court reached is different than the one this Court choses, the material circumstances vary. At the time of the liquidation Standard Lime and Cement had a unity of interest with American–Marietta, was labeled a division, and retained an independent existence in form only. Under such circumstances the Court feels obliged to reshape the fabric comprising the corporate veil to the extent that American–Marietta is determined the real party in interest, and venue is properly place in Maryland (American–Marietta has been reincorporated as Martin–Marietta and has its principal place of business and principal office or agency in Bethesda, Maryland (Ex A, X and V)).

In doing so the Court realizes that it is depriving Plaintiff of the favorable forum of the Sixth Circuit, which decided a similar matter concerning depletion allowance based upon magnesium hydroxide, *Dow Chemical Company v. Commissioner*, 433 F.2d 283 (1970). The Court, nevertheless, feels constrained to construe the venue provision of 28 U.S.C. § 1402 to comport with corporate reality.

Thus the Court finds the real party in interest to be Martin–Marietta (formerly American–Marietta) and venue to be improper. To preserve the new Plaintiff's rights, the action shall not be dismissed, but shall be transferred to the proper Maryland United States District Court.