## BICKNELL v. LLOYD–SMITH.
### No. 220.

Circuit Court of Appeals, Second Circuit.
Feb. 19, 1940.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

Cuthell, Appleby, Osterhout & Mills, of New York City (Howard Osterhout, John B. Coman, and John S. McCook, all of New York City, of counsel), for appellant.

Wright, Gordon, Zachry & Parlin, of New York City (James A. Fowler, Jr., F. J. Knauer, and W. R. Perdue, Jr., all of New York City, of counsel), for appellee.

L. HAND, Circuit Judge.

The plaintiff appeals from a judgment dismissing his complaint because of his incapacity to sue in the District Court of the Eastern District of New York. The complaint was filed on August 8th, 1938, the summons and complaint were delivered for service on August 20th, and the defendant was served on September 16th. The plaintiff is the receiver of a Michigan bank, and sues the defendant upon her guaranty of some bonds issued by a California corporation which the bank had bought, and which came into his hands among its assets. After various amendments not necessary to set out, the defendant moved for summary judgment on the pleadings under Rule 56(b), 28 U.S. C.A. following section 723c, upon the ground that the cause of action was not vested in the receiver, and that he had not

procured ancillary appointment in New York. The judge so held and dismissed the complaint. The plaintiff was appointed under Act No. 32 of the Public Acts of Michigan of 1933, by the Commissioner of the State Banking Department of that state. Under section 4 of this act the commissioner, with the governor's consent, has power "to take over as conservator the custody and management" of any state bank, including all its property; and under section 5 "to wind up its affairs", in which event by virtue of section 6 "he may appoint a receiver, with the approval of the governor, who shall proceed to close up such bank * * * and enforce the statutory liability of the stockholders". This receiver is to "take possession of the books, records, and assets * * * collect all debts * * * and, upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts * * * sell all the real and personal property * * *; and may * * * enforce the statutory liability of the stockholders, and * * * take such other steps * * * deemed necessary or expedient to conserve the assets *, * * and wind up the affairs of said bank * * * and distribute its assets, with such powers as are provided by the general banking * * * law". Section 9a gives the receiver further power "to make * * * any or all * * * conveyances .* * * necessary * * * to * * * convey * * * his * * title * * * or the * * * title" of the bank "in any real or personal property". We shall assume for argument that the plaintiff's appointment did not "vest" him with title within the doctrine of Converse v. Hamilton, 224 U.S. 243, 32 S.Ct. 415, 56 L.Ed. 749, Ann.Cas.1913D, 1292.

■ It will be observed that, although the complaint was filed on August 8, 1938, the defendant was not served until September 16th, the very day on which the Rules of Civil Procedure went into effect. However, no question arises as to whether the plaintiff, in order to escape the Statute of Limitations, must antedate the day of actual service and make use of Rule 17(b) retroactively. The action was as good on September 16th as it had been on August 20th, when the papers were delivered for service. That being true, the Rules apply, since the motion was "a further proceeding" in the action (Rule 86); and the first, and, as we think, the only,

question is whether the third sentence of Rule 17(b) gives such a receiver capacity to sue in a foreign district court: "In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held". In New York, with certain exceptions not here material, a foreign receiver may sue without ancillary appointment. Mabon v. Ongley Electric Co., 156 N.Y. 196, 50 N.E. 805; Howarth v. Angle, 162 N.Y. 179, 56 N.E. 489, 47 L.R.A. 725; Shipman v. Treadwell, 200 N.Y. 472, 93 N.E. 1104; Royal Trust Co. v. Harding, 155 App.Div. 104, 140 N.Y.S. 9; Union Guardian Trust Co. v. Broadway Nat. Bank & Trust Co., 138 Misc. 16, 245 N.Y.S. 2. The same is true of assignees or trustees in insolvency. In re Waite, 99 N.Y. 433, 448, 2 N.E. 440. It is true that at times the court has spoken of the receiver in these cases as a "quasi-assignee", but we think it clear that the federal doctrine, which requires the equivalent of "title" to be vested in him, does not prevail in New York. Nor can we see that it makes any difference that in all the decisions some court had appointed the receiver. If a chancery receiver may sue in New York, a statutory receiver appointed by an administrative officer, should be in as strong a position; for the defect of the first's title in those jurisdictions which require his ancillary appointment, arises from the fact that the power of the court, whose officer he is, ends with the state's border. A statutory receiver, who is not "vested" with title, is in no worse position. Both he and a chancery receiver get a transfer of possession, and if that is enough for the chancery receiver it is impossible to see why it should not do for a statutory. Indeed, we do not understand that the defendant disputes that the plaintiff could have sued in a court of New York. We hold therefore that, if Rule 17 (b) stood alone, the action was well brought.

■ The judge came to the opposite conclusion because of Rule 66, which provides that "the practice in the administration of estates by receivers or by other similar officers appointed by the court shall be in accordance with the practice heretofore followed in the courts of the United States". We cannot agree. In the first place the phrase, "appointed by the court", is not at all appropriate to an appointment by a state court, and for that matter not very appropriate to an appointment by

another federal court; the natural reading is that the practice of the federal court which appoints the receiver shall govern his administration under its supervision. Had the intent been to make the rule apply to all receivers, no matter what court appointed them, we should expect the indefinite particle: "appointed by a court", or even, "appointed by any court". Nor can we see how the defendant escapes the requirement that at least some court shall appoint the receiver; we can find no underlying purpose in the rule to induce us to disregard this explicit limitation, assuming that any such would serve, if we could. We shall try to show why.

■ Rule 17 (b) changed the law as to individuals (New York Evening Post v. Chaloner, 2 Cir., 265 F. 204) but not as to corporations (David Lupton's Sons v. Automobile Club, 225 U.S. 489, 32 S. Ct. 711, 56 L.Ed. 1177, Ann.Cas.1914A, 699). Literally at any rate, it also changed the law as to receivers of all sorts. Perhaps Rule 66 prevented its application to federal receivers appointed by a court, and suing in other federal courts; the word, "administration" covers, somewhat loosely, all those steps by which the receiver gets possession of the assets and distributes them, and it can without unfair wrenching include adversary actions brought to reduce the assets to possession. Even so, one district court is distinct from another, and it does a little stretch the meaning to think of an action pending in another court as part of the administration of the receiver in the primary court. However, practically speaking, all district courts usually unite to make the administration one, and it may be that the capacity to sue in another court is part of the "practice in the administration" of the estate. At any rate we leave open that question. But it would be most unnatural to think of the administration of a state receivership as being transferred pro hac vice into a federal court, merely because the receiver chooses to sue a debtor there. And if it would not, it is impossible to imagine any reason for imposing upon a state receiver conformity with the practice in federal receiverships in such a detail; or for denying to him the same standing to sue that he has in a state court.

Against such refinements the meaning of Rule 66 seems to us to stand out plainly enough. The committee did not wish to undertake a revision of the practice in federal receiverships; it was a long and hard task, and, besides, reorganization had very recently been taken over as part of bankruptcy, and was pretty plainly still in flux anyway. Therefore they provided that federal receiverships should continue to be governed as they had been before; and, as we have said, possibly in so doing they impaired the entire symmetry of § 17 (b). Be that as it may, there is no reason to impute to them a purpose to preserve a bit of the old procedure, merely as such, which had no relation whatever to the main purpose of Rule 66, and which contradicted the general intent of Rule 17 (b). Practically, it was a very inconvenient doctrine anyway, requiring, as it did, the altogether idle ceremony of an ancillary appointment; it would be absurd to impute to the committee any partiality for such an exception. The defendant hangs much upon the following sentence out of Professor Moore's Federal Practice (Vol. II, p. 2091) when speaking of Rule 66: "This adopts the well-settled federal rules on * * * the capacity of chancery receivers * * * and should prevail over the generality of Rule 17 (b)". The well-deserved authority of the author would, in deed, make us pause before refusing to accept his opinion; but it is possible to read the sentence so as not to cover state receiverships, or at least only those "appointed by the court". If not, we can only say with deference that the difficulties of making Rule 66 go so far, do not seem to us to have been observed.

Judgment reversed; cause remanded.