## SHERWOOD v. UNITED STATES.
### No. 306.

Circuit Court of Appeals, Second Circuit.
.June 3, 1940.

Milton U. Copland, of New York City (M. Carl Levine and Morgulas & Foreman, all of New York City, on the brief), for plaintiff-appellant.

Sidney J. Kaplan, Sp. Asst. to Atty. Gen. (Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y., and Francis M. Shea, Asst. Atty. Gen., Maurice W. Hibschman, Atty., Dept. of Justice, of Washington, D. C., and Vine H. Smith, Asst. U. S. Atty., of Brooklyn, N. Y., on the brief), for the United States.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This is an action by Jacob Sherwood, as judgment-creditor of Frederick Kaiser, brought against the United States of America and Kaiser, to recover damages claimed to be due Kaiser upon the latter's contract with the United States for the construction of a post office. Suit is brought in the district court upon the theory that the claim was one properly cognizable under the Tucker Act, 28 U.S.C.A. §§ 41(20) and 250, by which the United States consents to be sued in certain cases, in either the district court or the court of claims.[1] Sherwood and Kaiser are both residents of the State of New York. Sherwood obtained his judgment against Kaiser in the New York Supreme Court, and pursuant to New York Civil Practice Act, § 795, he procured an order from that court permitting him to bring an action against the United States as a debtor of Kaiser, his judgment-debtor. Purporting to act under the New York order, he then brought the present action, wherein he joined Kaiser as a party defendant, as the New York statute provides.[2]

[1] The original Tucker Act, March 3, 1887, c. 359, 24 Stat. 505, which extended jurisdiction to the district courts previously limited to the court of claims, was in form repealed, but in effect restated in the Judicial Code of 1911, §§ 24(20), 145, and § 297, 36 Stat. 1168, 36 Stat. 1093, 1136, 28 U.S.C.A. §§ 41(20), 250, 1168.

[2] N. Y. Civil Practice Act § 795 is as follows: "Action by judgment creditor against third party. Where it appears from the examination or testimony taken or other proof satisfactory to the court that a person or corporation is indebted to the judgment debtor, the court may make an order authorizing the judgment creditor to maintain an action against such person or corporation for the recovery of such debt. Such order may also forbid the transfer or other disposition of such debt until an action can be commenced and prosecuted to judgment and may direct that the papers or proof in the possession or control of the debtor and necessary in the prosecution of such action be delivered to the creditor or impounded in court. Such order or the judgment entered in the authorized action may provide for the disposition of any moneys in excess of the sum required to

The motion of the United States to dismiss the complaint was granted and plaintiff appeals.

When this action was brought there was pending in the court below an action brought by the United States against Kaiser and the surety on his bond to recover damages for nonperformance of this same construction contract. The parties herein stipulated for the consolidation of this action with the earlier one and an order of consolidation was entered. Then the Government, though it had sought the consolidation, came to doubt the validity of that step and obtained a vacation of this action. Appellant did object to the vacating of the consolidation order, but does not press his objection here, being apparently quite content to keep his claim separate from the claim of the United States against Kaiser. But if we are correct in the views we set forth hereinafter, consolidation was a matter well within the discretion of the court. We shall refer to it because of the obvious procedural economy of judicial action it here presents. Unless we are prevented by some positive rule of law which embodies an overriding public policy, we think it in the public interest that these conflicting claims arising out of a single matter— Kaiser's performance or nonperformance of his contract with the United States—should be settled in one action. That is the trend of modern procedural reform, as exemplified by the new federal rules of civil procedure, in the development of which high officials of the appellee itself assumed such effective leadership.

■ Indeed, if the new rules are applicable, they justify the procedure which the court below originally followed. They furnish a reply to appellee's first contention that New York Civil Practice Act, § 795, ex proprio vigore, cannot confer any power to sue in the federal courts. We think Rule 17(b), Rules of Civil Procedure, is against this contention. That rule states that "the capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of his domicile." Compare Bicknell v.

Lloyd-Smith, 2 Cir., 109 F.2d 527. Nothing in the law of the State of New York limits the capacity to sue conferred by Section 795 to a capacity to bring actions in the state courts alone.

■ It is argued that the new rules do not apply to Tucker Act cases brought in the district court. The intent that they should apply is made manifest throughout the rules. Rules 1 and 81 carefully provide that they shall apply to all suits of a civil nature, whether cognizable as cases at law or in equity, except those specifically excepted; and the character of the proceedings which it was thought necessary to except by express statement in Rule 81, as well as the language of these rules, shows that the new "civil action" includes actions against the United States. Careful protection of the rights of the United States as a party is made in various provisions, such as those giving the United States 60 days to plead, instead of the 20 days allowed the ordinary litigant, Rule 12(a); and see also Rules 4(d) (4), 13(d), 25(d), 37(f), 39(c), 45(c), 54(d), 55(e), 62(e), and 65(c). The official notes of the Advisory Committee show the Committee's view that while certain of the procedural provisions of the Tucker Act were continued intact others were modified by the rules.[3] See also 1 Moore's Federal Practice 248–250.

We are cited to the high authority of Lynn v. United States, 5 Cir., 110 F.2d 586, as holding otherwise; and the court there seems prepared to go to the length of holding the rules wholly inapplicable to Tucker Act cases, although it is not clear that so broad a ruling was required in the case there presented. With all deference we cannot go so far; and we think the statute, 28 U.S.C.A. § 761, which was the court's authority for its view, persuades to the contrary. Only five sections of the statutes deal directly with procedure in Tucker Act cases. 28 U.S.C.A. §§ 761–765, Act of Mar. 3, 1887, §§ 4-7, 10, 24 Stat. 506, 507. Of these, 28 U.S.C.A. § 761 states that "The course of procedure for the district courts and the court of claims in cases under section 41, paragraph 20, and section 250 of

---

pay the creditor's judgment, costs, disbursements and expenses allowed by the court. Such action by a judgment creditor against the debtor of the judgment debtor shall make the judgment debtor a party defendant, and costs shall be awarded as prescribed by law; but if judgment be in favor of the judgment creditor and against the debtor of the judgment debtor, and the debtor of the judgment debtor did not dispute the indebtedness, then costs are not to be awarded against the debtor of the judgment debtor."

3 See note 4, below, for the particular rules here involved.

this title, in so far as applicable and not inconsistent with sections 762 to 765, and the procedure prescribed for the court of claims shall be in accordance with the established rules of said respective courts, and of such additions and modifications thereof as said courts may adopt." Sections 762–765 contain no inconsistencies presently relevant.[4] It has been held that so far as the rules modify these sections the rules prevail, United States v. American Surety Co., D.C.E.D.N.Y., 25 F.Supp. 700, but that question is not before us. If the new district court procedure does not apply under Section 761, we may well ask what procedure the district courts are to follow in adjudicating on claims against the United States. In Bates Mfg. Co. v. United States, 303 U.S. 567, 571, 58 S.Ct. 694, 696, 82 L. Ed. 1020, the Supreme Court pointed out that the Tucker Act was originally passed to relieve the congestion of claims in the court of claims for which the Government was to be justly censured, and to provide "adequate opportunity for expeditious and orderly determination of claims against the Government." To effectuate such a purpose, procedure carefully designed to secure orderly and expeditious settlement for all litigation would appear to be peculiarly apt.

■ Appellee reinforces its contention that the new rules are inapplicable by pointing out a difference in form of trial between this action and that with which it was originally consolidated. Under 28 U.S.C.A. § 41(20), trial of Tucker Act claims must be to the court without a jury, and Rule 39(c) expressly preserves that right. On the other hand, an action brought by the United States for breach of contract may be claimed for jury trial, and the Government's action against Kaiser and his surety has been claimed for such trial by the defendants. But it is a commonplace of the state code action, with its possible numerous and diverse issues, that different forms of trial may be necessary for different issues. Such necessity does not prevent the all-inclusive nature of the action and the procedural gains which result from a settlement of all angles of a dispute in a single adjudication. The new federal rules ex-

pressly adopt this practice. Form of trial is determined for each issue, not for the action as a single unit. Rules 38 and 39; James, Trial by Jury and the New Federal Rules of Procedure, 45 Yale L.J. 1022; Pike and Fischer, Pleadings and Jury Rights in the New Federal Procedure, 88 U. of Pa.L.Rev. 645.

■ ■ Appellee goes further, however, and urges that with respect to claims against the United States the district courts exercise a special jurisdiction concurrent with the court of claims and similarly circumscribed. The Supreme Court cases make clear that this similarity is one of the substance of the rights and privileges of the claimants; there is nothing in them which asserts the necessity of identic procedure. Bates Mfg. Co. v. United States, supra; United States v. Pfitsch, 256 U.S. 547, 41 S.Ct. 569, 65 L.Ed. 1084. True, some cases in the court of claims refer to procedural obstacles as though they were jurisdictional. Thus in Waite v. United States, 57 Ct. Cl. 546, that court suggests its lack of jurisdiction to allow an intervening defendant to come into a suit on a claim before it. But a distinction should be made between the grant of power to adjudicate a claim against the United States and the manner or procedure by which that power shall be exercised. The statutory provision here, 28 U.S.C.A. § 41(20), 24 Stat. 505, allows the district court to hear claims "upon any contract, express or implied, with the Government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect to which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable." This is a general grant of power in the circumstances stated, without limitation as to procedure. Indeed, the statute quoted above, 28 U.S.C.A. § 761, contemplates differences in practice in the two courts. Limitations on procedure in the court of claims, therefore, cannot be jurisdictional defects in the district courts. There is no reason why the court of claims may not adopt the new district court procedure at any time. Moreover, Rule 17(b) here merely restates former federal prac-

**4** The Committee's notes to Rules 3, 4 (d) (4), 11, 12(a), 52(a), 55(e), and 75 point out that substantially all the provisions of §§ 762–765 are continued—including such requirements as verification of the petition or complaint (Rule 11) and the filing of a written opinion giving the court's findings of facts and conclusions of law, compare Rule 52(a)—with some slight addition without change of substance of § 763 by Rule 4(d) (4) as to service and notice of suits.

tice.[5] Whether or not it is made applicable in the court of claims, it appears to be a procedural rule not going to the district court's jurisdiction.

■ The same considerations answer appellee's contention that, since Kaiser should be joined as a defendant under New York Civil Practice Act, § 795, suit against it cannot be brought under the doctrine of Waite v. United States, supra. But whatever the practice as to joinder may be in the court of claims, we cannot view it as a question of primary jurisdiction of the district court. The provision of the New York statute is obviously for the protection of the judgment-debtor with reference to the balance above the amount of the judgment-creditor's claim and for the protection of the third-party debtor, assuring him that the matter in issue will become res judicata after judgment is entered. Joinder for the latter purpose is, of course, for the benefit of the appellee. So far as the judgment-debtor has any separate controversy with the plaintiff, the court's power to adjudicate separate issues in one action and to order separate trials if desirable, Rule 42(b), is adequate to prevent injustice or even inconvenience to the Government. The alignment of parties to a civil action now is not a matter of fundamental importance; under Rule 19(a) a person can even be made an involuntary plaintiff. We see no reason why Kaiser cannot be a defendant in the present action without destroying jurisdiction.

■ Appellee further contends that Rule 17(b) is inapplicable in the face of R.S. § 3477, 31 U.S.C.A. § 203, prohibiting assignment of a claim against the United States before the claim is allowed. As we read New York Civil Practice Act, § 795, it does not bring about an assignment or transfer of title of the debt to the judgment-creditor, but merely confers upon him a power to bring an action. This conclusion seems to be supported by a consideration of the background and history of the legislation; we shall have occasion to note below that it was passed to supplement existing statutes providing on the one hand for levy on wages, debts, and like claims, and on the other for enforcement of such claims through receivership proceedings.[6] But even if Section 795 does provide for an actual assignment of the claim, nevertheless it is then an assignment by operation of law. The assignor has had no part in it; the act is wholly in invitum so far as he is concerned. R.S. § 3477, 31 U.S.C.A. § 203, applies only to voluntary assignments, and not to all of those (Goodman v. Niblack, 102 U.S. 556, 26 L.Ed. 229); it does not reach assignments by operation of law. Brooks v. Mandel-Witte Co., 2 Cir., 54 F.2d 992; Western Pac. R. R. v. United States, 268 U.S. 271, 45 S.Ct. 503, 69 L.Ed. 951. The purpose of R.S. § 3477 is to protect the Government from traffic in claims against it, and no trafficking can result from a court order appointing the judgment-creditor as the person entitled to bring suit, and enjoining the judgment-debtor from interfering therewith. The judgment-creditor then becomes the real party in interest under Rule 17(a) and as such is the proper party plaintiff. Rosenblum v. Dingfelder, 2 Cir., 111 F.2d 406.

Appellee complains that the New York judgment was not sufficiently alleged in

---

5 Rule 17(b) did change the controlling law from that of the state where the district court was being held to that of the domicile—a change of no importance here in view of Sherwood's New York domicile. Advisory Committee's notes to Rule 17(b); 2 Moore's Federal Practice 2084, 2085. Compare also Rule 17(a) for suit in the name of the real party in interest, with its provision that "a party authorized by statute may sue in his own name." 2 Moore's Federal Practice 2074; Clark, Code Pleading, 124.

6 From the time of David Dudley Field and the original New York Code of Civil Procedure to the present, the procedure to effect execution of a judgment has been considered inadequate, and steps have been advocated and taken to provide better remedies for judgment-creditors. The matter was studied by the New York Commission on the Administration of Justice and by the New York Judicial Council, and on recommendation of the latter, new remedies were provided by the legislature in 1935, of which the statute here in issue was one. This history is recounted in I. H. Cohen, Collection of Money Judgments in New York, 35 Col. L.Rev. 1007, 1196, 36 Col.L.Rev. 1061. See also Comment, 48 Yale L.J. 1377. Federal Rule 69(a) expressly provides that the procedure on execution in the federal courts, "in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution," shall be in accordance with state practice and procedure.

the plaintiff's complaint. A general allegation of a court judgment is authorized by Rule 9(e), and the form of allegation contained in this complaint appears to be quite adequate under that rule. In any event, the rules provide means for securing detailed information, Rules 12(e), 26 et seq.; and it is clear from the papers in the record that defendant had sufficient information as to the court's order to enable it properly to prepare its defense.

It is also vigorously asserted that the effect of the New York statute is to provide for garnishment, and that the United States cannot be subjected to garnishment. This contention presents questions as to both the aptness and the adequacy of the suggested analogy. Since the Supreme Court in Buchanan v. Alexander, 4 How. 20, 11 L.Ed. 857, in 1846, vacated an "attachment" of moneys due seamen on a war vessel because national funds specifically appropriated for one purpose could not be otherwise used, it seems to have been generally believed that garnishment would not lie against the United States. But as pointed out in Federal Housing Administration v. Burr, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. ——, the reason for the Buchanan decision was that the United States could not then be sued. As Justice Douglas says, garnishment is simply a form of suit, and when consent to sue is granted, that consent would normally include the process of garnishment, unless there are exceptional circumstances to show its exclusion. Hence the Court in the Burr case held that a Congressional grant of consent to sue the Federal Housing Administration subjected it to garnishment process.[7] It would follow, therefore, that, where the United States has consented to be sued, without limitation on the manner thereof, suit by garnishment is included in such consent, unless other statutes show a policy to the contrary or provide restrictions on the remedy. In the light of the Burr case, the question whether garnishment or like process may be brought on a Tucker Act claim must be reëxamined.

We do not propose such a general reëxamination at this time, for the statutes providing for what is generally termed inclusively "garnishment" are of such varying form as to make abstract propositions of little value. We have seen that there are various statutes limiting the enforcement of Tucker Act claims, such as the one restricting assignments which we have discussed above. How far those laws may apply to a particular state statute of "garnishment" must be considered as each case is presented. We have already indicated our view that no federal statutes prevent the application of New York Civil Practice Act, § 795, in this case. We may add that, while, of course, Section 795 has a similarity to what we ordinarily think of as garnishment—it attempts to secure for a creditor a claim due to the debtor from a third person—it does not seem to be so considered in the New York statutory scheme. Garnishment is more properly the process, authorized as early at least as 1843, now appearing in New York Civil Practice Act, § 684, for "levy upon earnings or income of judgment debtor." This process is limited in various ways in the manner and form of its enforcement and can be had only "where any wages, debts, earnings, salary, income from trust funds or profits are due and owing to the judgment debtor or shall thereafter become due and owing to him, to the amount of twelve dollars or more per week." It was but natural that a new remedy not thus restricted, and enforceable by direct action by the creditor against the third-party debtor, should be thought desirable.[8]

This new remedy of Section 795 seems in many ways more like a proceeding by a receiver in supplementary proceedings authorized under New York Civil Practice Act, §§ 804–810, than like a garnishment action under § 684. Such a receiver could maintain the present action without doubt, even though he, too, in substance is but an instrument for reaching a claim owed to the judgment-debtor. Erwin v. United States, 97 U.S. 392, 24 L.Ed. 1065; Goodman v. Niblack, supra;

---

[7] The court held, however, that such consent did not of itself go so far as to justify execution against funds in the United States Treasury, even though the judgment might thus be rendered ineffective for lack of an appropriation to satisfy it. Compare discussion of the Burr case in the majority and dissenting opinions in Reconstruction Finance Corp. v. J. G. Menihan Corp., 2 Cir., 111 F.2d 940. And see also United States v. Winkle Terra Cotta, Inc., 8 Cir., 110 F.2d 919.

[8] See articles cited note 6, above.

Price v. Forrest, 173 U.S. 410, 19 S.Ct. 434, 43 L.Ed. 749; Western Pac. R. R. v. United States, supra.

A receiver in supplementary proceedings, appointed under §§ 804-810 of the Civil Practice Act, could maintain the present action despite the cry of garnishment. Yet such a receiver is merely an agent of the judgment-creditor. There is no reason to deny a similar power to the judgment-creditor himself when, with the permission of the court, he invokes the shortcut authorized by Section 795. His position seems fairly analogous to that of a receiver, acting under the control of the court signing the order.

A final question, whether the United States is a person or corporation indebted to the judgment-debtor within the language of New York Civil Practice Act, § 795, was not briefed or argued, but seems to us of such decisive importance as to deserve our attention here. Nothing in the entire chapter on supplementary proceedings (N.Y. Civil Practice Act, §§ 773-810) indicates whether or not the word "person" includes the State of New York or the United States. "Person" has received varying interpretations in varying statutory contexts. Section 37 of the N. Y. General Construction Law defines "person" so as to exclude the sovereign except in one case not now relevant, and it has been held that this exception indicates that "person" does not include the state in any other connection. Saranac L. & T. Co. v. Roberts, 195 N.Y. 303, 323, 88 N.E. 753; see Onondaga County Sav. Bank v. Love, 166 Misc. 697, 3 N. Y.S.2d 428. In Curtis, Statutes and Statutory Construction, 1 McKinney's Consolidated Laws of New York, § 65, we are told that the word "person" is not to be construed as including the sovereign, citing Matter of Fox, 52 N.Y. 530, 11 Am. Rep. 751. The Fox case was affirmed by the United States Supreme Court, and the point at issue reiterated, in United States v. Fox, 94 U.S. 315, 24 L.Ed. 192. And see Davis v. Pringle, 268 U.S. 315, 45 S. Ct. 549, 69 L.Ed. 974.

On the other hand, the Court of Appeals has ruled that a foreign nation is a "person" within the statute requiring nonresident persons to provide security for costs in litigation. Republic of Honduras v. Soto, 112 N.Y. 310, 19 N.E. 845, 2 L.R.A. 642, 8 Am.St.Rep. 744. This holding was recently reiterated in Ohio ex rel. Fulton v. Saal, 239 App.Div. 420, 267 N.Y.S. 558, appeal dismissed on other grounds, 264 N.Y. 465, 191 N.E. 516, in an opinion discussing the definition of "person" in § 37 of the General Construction Law and refusing to apply it. And in Nardone v. United States, 302 U.S. 379, 383, 58 S.Ct. 275, 82 L.Ed. 314, the word "person" in the Federal Communications Act was held to include both the Government and it agents, over a vigorous dissent by Mr. Justice Sutherland on that very issue. See also Stanley v. Schwalby, 147 U.S. 508, 517, 13 S.Ct. 418, 37 L.Ed. 259.

Despite the General Construction Law, the meaning of the word in each case appears to depend upon the legislature's intent under the circumstances. Matter of Bronson's Estate, 150 N.Y. 1, 5, 44 N.E. 707, 34 L.R.A. 238, 55 Am. St.Rep. 632. In cases like the present, where speculation over actual intent is futile, we can rely only on our estimate of whether or not the injuries done to the sovereign by including it within the purview of the statute are so great that the legislature can be presumed not to have intended them.

If the state has been made susceptible to all third-party orders in supplementary proceedings, it may, of course, be subject to considerable inconvenience. But there is reason to believe that the legislature might think such embarrassment to be outweighed by the increased efficiency in execution which might thus be achieved. The State of New York permits itself to be garnished. New York Civil Practice Act, § 684(8). The state may also be examined before trial in suits brought against it in the New York Court of Claims. N.Y.Court of Claims Act, § 17. And in at least three third-party actions brought under the new supplementary proceedings chapter, the State of New York has appeared and failed to object that it was not a "person or corporation indebted to the judgment-debtor." Brearton v. Morgan, 257 App.Div. 34, 12 N.Y. S.2d 99; Hollywood Garage Corp. v. Pettis & Co., Inc., 169 Misc. 906, 9 N.Y.S. 2d 374; Heilman v. St. Cloud Restaurant, 164 Misc. 15, 297 N.Y.S. 111.

We regret the necessity of defining the meaning of "person" in Section 795 before any New York court has had an opportunity to do so. Cf. Sammet v. Mayer, 2 Cir., 108 F.2d 337. But we cannot avoid that responsibility, for the debtor of the judgment-debtor is entitled to

attack the validity of the order authorizing supplementary proceedings against him. Nankivel v. Omsk All Russian Government, 237 N.Y. 150, 158, 142 N. E. 569. With some hesitation we rule that the sovereign is included within the word "person" in Section 795.

If the legislature intended to include the state as a person in Section 795, it would seem to follow that the United States is likewise so included. The United States, of course, cannot be sued without its consent. But we have already ruled that by the Tucker Act and Rule 17(b), consent is given to a suit brought by a judgment-creditor of the person holding a claim against the United States, who has been authorized by state law to conduct the action.

In summary, therefore, we see procedural advantages in the course first followed below and do not find it prohibited. Though the issue of consolidation of the two actions was not pressed before us, yet the power to consolidate is given the court whenever "actions involving a common question of law or fact" are pending before it. Rule 42(a). This would seem a most appropriate case for the exercise of that power. It is not prevented, as urged below, by R.S. § 951, 28 U.S.C.A. § 774, restricting the use of counterclaims against the United States not previously presented to the accounting officers of the Treasury. This claim upon the part of Sherwood, independently asserted in this action, is not a claim which the defendant in the other action has against the opposing party at the time of filing his answer. Rule 13(a) and (b).

Reversed.