THE COMMONWEALTH OF PUERTO RICO, Petitioner, v. SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, FAUSTO RAMOS QUIRÓS, JUDGE, Respondent.

No. O-69-127.     Decided February 10, 1970.

*J. F. Rodríguez Rivera, Acting Solicitor General,* and *Elpidio Arcaya, Assistant Solicitor General,* for petitioner.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

In this case, we issued a writ to review the order of the trial court of June 27, 1968, entered to secure the effectiveness of its judgment of March 18, 1966, in case No. 58-3611, *Morales* v. *Metropolitan Construction Corporation*, for the purpose of attaching "Whatever properties, by certifications, withholdings, or any other concept which should be paid or which are deposited in favor of Metropolitan Construction Corporation, in the Department of Public Works." Notice of said attachment was served upon the corresponding officer of said department.

The Secretary of Justice requested intervention in said case "to the only effect of requesting the nullity of the attachment levied, so that, in due time, the court will order to set aside said attachment insofar as the Commonwealth is concerned." The motion for intervention having been set for hearing, was denied on October 25, 1968, "Because the moving party did not appear." At the request of the Secretary of Justice to set aside the foregoing determination in view of the fact that the Secretary was not notified of the setting of said hearing, and to set another hearing on the motion for intervention since the Secretary "is very much interested in that the motion for intervention be discussed," the trial court ruled "Denied."

Not only should the order of October 25, 1968 be reversed, but the attachment levied should also be vacated.

■ The trial court should have given petitioner a reasonable opportunity to prove that he was not notified of the setting of the hearing on his motion for intervention. Therefore, it erred upon denying his petition for another hearing.

The attachment executed in this case cannot subsist. We will explain ourselves hereinafter.

We are concerned here with an attachment proceeding to secure effectiveness of judgment through an order to withhold property in the possession of a third person—garnish-

ment—proceeding which is sanctioned in this jurisdiction. *Ruiz* v. *Commercial Insurance*, 83 P.R.R. 312, 314, footnote 2 (1961).

The doctrine that public funds may not be object of attachment was established by the Supreme Court of the United States in *Buchanan* v. *Alexander*, 45 U.S. 18; 11 L.Ed. 857 (1864). Pursuant to the facts in this case, moneys which were in the hands of the purser of the frigate Constitution were attached in an action of debt against the seamen of the frigate. The purser paid the seamen disregarding the attachment. Judgment was rendered against the purser. When the court reversed the judgment it said that the attachment "diverted" the public money from its legitimate and appropriate object; that no government can sanction this—it might be fatal to the public service; that "The funds of the government are specifically appropriated to certain national objects, and if such appropriations may be 'diverted' and 'defeated' by state process or otherwise, the functions of the government may be suspended. So long as money remains in the hands of a disbursing officer, it is as much the money of the United States as if it had not been drawn from the Treasury. Until paid over by the agent of the government to the person entitled to it, the fund cannot in any legal sense be considered a part of his effects. The purser is not the debtor of the seamen."

In *Federal Housing Administration* v. *Burr*, 309 U.S. 242 (1940), the question to be decided was whether the Federal Housing Administration was subject to garnishment for moneys due to an employee against whom judgment had been obtained, which judgment was sought to be executed by such garnishment. Justice Douglas decided that the rule established in *Buchanan, supra,* is grounded on the principle that the United States cannot be sued without its consent. On the contrary, he said that the Administration was authorized to sue

and be sued, and by such virtue it was subject to the garnishment proceeding. The court decided that the waiver of the immunity which Congress grants in the case of federal instrumentalities should be liberally construed; hence, when Congress establishes an agency and authorizes it to engage in commercial and business transactions with the public and permits it to sue and be sued, it cannot be assumed that restrictions on that authority are to be implied; it must be clearly shown, in cases like this one, that certain types of suits are not consistent with statutory or constitutional scheme so that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function and that, in the absence of such showing, it must be presumed that when Congress created the agency its purpose was that it would be not less amenable to judicial process than a private enterprise under like circumstances would be; that the authority to sue and be sued in its normal connotation embraces all civil process incident to the commencement or continuance of legal proceedings, garnishment and attachment being part and parcel of said process for the collection of debts.

In *United States* v. *Krakover*, 377 F.2d 104 (10th Cir. 1967), it was held that the United States cannot be ordered to pay to a trustee, under Chapter 13 of the Bankruptcy Act, part of the wages of one of its employees; that the United States is immune from execution and garnishment pursuant to *Buchanan, supra;* that what was proper in this case was to order the employee in bankruptcy to endorse and turn over the paychecks to the trustee.

*Sherwood* v. *United States*, 112 F.2d 587 (2d Cir. 1940), dealt with an action filed by a judgment-creditor of a certain Kaiser brought against the latter and the United States, to recover damages claimed to be due to Kaiser upon the latter's contract for the construction of a post office. This action was

brought under the Tucker Act, by which the United States consents to be sued in certain cases. The creditor, after obtaining judgment against Kaiser in the New York Supreme Court, procured an order from that court, pursuant to a state statute, permitting him to bring said action against the United States.

Justice Clark held that the New York statute operates in the manner of garnishment and that the action brought in this case was appropriate because when the United States consented to be sued in this kind of case, said consent includes the process of garnishment, unless the state indicates a policy to the contrary or provides restrictions on the remedy.

In *Weinstein, Bronfin & Heller* v. *LeBlanc*, 192 So.2d 130 (La. 1966), a garnishment proceeding against wages due to a state senator of Louisiana was involved herein. A statute of said state authorized the garnishment of wages, salaries, commissions, or other compensation of public employees or contractors, of itself, its agencies, boards, commissions, political subdivisions, public corporations, and municipal corporations. However, the Supreme Court of the state concluded that a senator is a public official and not a public employee, so that the waiver of immunity in garnishment proceeding does not include the salary or emoluments of a public official. The court said, citing the case of Buchanan, *supra*, that this immunity is not affected by the fact that the fund sought to be reached has been segregated from the general public funds and was to be disbursed by the Chairman of the Disbursing Committees of each House of the State Legislature by means of individual checks issued to the members of each House.

In *State* v. *Allred*, 425 P.2d 572 (Ariz. 1967), it was held that in Arizona the state may be garnished as to wages owed by it to its employees and officials. In this case it was sought to garnish a cash deposit posted with the State Racing Commission to insure payment of certain racing fees. When the

garnishment was brought the fees in question had been paid. This proceeding arose in an action to collect a debt from a racetrack which had made the deposit in question. It was held that the authorization for the garnishment of wages necessarily excluded the state from being made garnishee under any other circumstances.

In *Brewington* v. *Brewington*, 387 S.W.2d 777 (Tenn. 1965), it was sought to levy an attachment proceeding to collect wages earned but not yet paid over to a state employee. The court stated that unless the Legislature manifested express consent to attachment proceedings, attachment of public funds may not be levied. In Tennessee the statute consented to the garnishment of salaries, wages or other compensation due from the state or from any county or municipality to any officer or employee thereof. The court decided that this was limited to judgment creditors. It did not lie in this case since a divorce action was involved wherein plaintiff sought to make the State a party defendant in the action as a means of recovering any money judgment which might be awarded to her.

In *Star Manufacturing Employees Fed. Cr. U.* v. *Araújo*, 164 A.2d 309 (R.I. 1960), a credit union obtained default judgment against an individual and moved that the State General Treasurer who held funds due to the defendant be charged as garnishee. The court decided that it did not lie because since the State could not be sued without its consent, neither could it be sued indirectly by process of garnishment; that "Public officials . . . are charged with certain well-defined duties, and the law prescribes the manner in which they shall be performed. If, while in the discharge of these duties, the officer is interfered with by some person who is a stranger to the proceedings, confusion and inconvenience will necessarily be the result."

*Hilton* v. *Amburgey*, 96 S.E.2d 151 (Va. 1957), dealt with a statute which made the salaries of officers of any city, town or county subject to garnishment and another which allows this process in cases of salaries of officers of the State. It was held that these statutes were limited to persons employed by virtue of the municipal or county authority or of the General Assembly, so that constitutional officers such as sheriffs, clerks of courts, treasurers, commonwealth's attorneys and commissioners of revenue which hold their office by election are not subject to garnishment proceedings. See, also, *Nacy* v. *La Page*, 111 S.W.2d 25 (Mo. 1937); *Redwine* v. *Morgan*, 77 S.E.2d 330 (Ga. 1953); *Morgan* v. *Schmid*, 244 A.2d 824 (Conn. 1965); *Millstone Point Co.* v. *Rutka*, 244 A.2d 829 (Conn. 1966).

We will summarize hereinafter the state of law in Puerto Rico about the question under consideration.

In *F. L. de Hostos & Co.* v. *Madera*, 43 P.R.R. 591 (1932), we vacated an attachment upon the amount that should have been paid to a building contractor of four schoolhouses by the Treasurer of Puerto Rico upon presentation by the former to the latter of a certificate from the Commissioner of the Interior as to the amount of the work executed by said contractor, because "funds for public works are not subject to attachment," notwithstanding that "The People of Puerto Rico can now be sued in damages." This determination was grounded in similar decisions of this Court in the cases of *Crédito y Ahorro Ponceño* v. *Colón*, 36 P.R.R. 308 (1927) (attachment of funds belonging to a contractor which were in the hands of a municipality), and *Lamboglia* v. *The School Board of Guayama*, 15 P.R.R. 299, 308 (1909) (attachment of funds deposited in a bank in favor of the board for rents due on a schoolhouse in Guayama).

Act No. 104 of June 29, 1955 (32 L.P.R.A. § 3077), grants authorization to sue the Commonwealth of Puerto Rico

in (a) actions for damages caused by a culpable or negligent act or omission of any officer, agent, or employee of the Commonwealth, or of any other person acting in an official capacity within the scope of his duty, office, or employment, (b) actions to recover real or personal property or an interest therein, and (c) civil actions which are based on the Constitution, or on any law of Puerto Rico, or on any regulation of any department or division of the Commonwealth, or on any contract, express or tacit, with the Commonwealth.

Following the prevailing doctrine, we said in *Escambrón Development Corp.* v. *Commonwealth*, 82 P.R.R. 662 (1961), that "Act No. 104 must be construed strictly in favor of the sovereign and we may not include in its provisions any such action not expressly included by the Legislature." We reaffirmed this doctrine in *Jiménez* v. *People*, 83 P.R.R. 195, 199 (1961). In *Montes* v. *State Insurance Fund*, 87 P.R.R. 187, 194 (1963), we said that in considering the liability of the State in those cases in which a suit is filed pursuant to Act No. 104, "we should be untrammeled by any rule of strict or liberal construction," that is to say, that we should give full scope to the government's relinquishment of its historic immunity from suit, and on the other hand avoid narrowing the provisions which set forth situations in which the State has seen fit to retain that immunity.

It is argued, however, that pursuant to the provisions of Rule 56.1 of the Rules of Civil Procedure, in litigations between particular persons the Court may order the garnishment of public funds available for the payment of government debts such as, for example, bills to be paid to suppliers and amounts withheld under building contracts of public works; that the doctrine established in the cases of F. L. Hostos & Co., *supra*, and Crédito y Ahorro Ponceño, *supra*, was based on the provisions of the old Act to Secure the

Effectiveness of Judgments of 1902 (32 L.P.R.A. § 1070),[1] provisions which were more restrictive and did not have the ample scope of said Rule.

The Rule in question provides that:

"In every action, before or after entering judgment, on motion of the claimant, the court may make such temporary order as may be necessary to secure the effectiveness of the judgment. The court may order the attachment, garnishment, the prohibition to alienate, the claim and delivery of personal property, receivership, an order to do or desist from doing any specific act, or it may adopt any other measure which it may deem advisable, according to the circumstances of the case, regardless of whether according to the previous proceedings, the remedy is ancillary to an action or must be obtained by an independent action. In

---

[1] Section 2 of the Act to Secure the Effectiveness of Judgments provided that:

"The effectiveness of the judgment shall be secured in the following manner:

"(a) If the obligation on which suit is brought be the delivery of a certain object or thing possessed by the defendant or by a third person in the name of such defendant, said defendant, or third person, as the case may be shall be prohibited from alienating or encumbering the object or thing until judgment has been rendered.

"(b) If the obligation be the payment of any sum of money, the provisional remedy shall consist of the attachment of sufficient property of the debtor to cover the amount claimed.

"(c) If the obligation consists in the doing of a thing, an attachment shall be issued against the person who is under such obligation for a sum necessary to execute the work left undone or done otherwise than as provided in the agreement.

"(d) If the purpose of the action be to prevent the accomplishment of an act, the remedy shall consist in prohibiting the defendant from executing or continuing the execution of such act under warning of being punished for contempt of court, and in the attachment of a sum sufficient to indemnify against any act executed in contravention of the rights of the demandant.

"(g) In the foregoing cases, if damages are claimed, the remedy may include the attachment of the property of the defendant to an extent sufficient to cover such damages.

"(h) With respect to cases not provided for in the preceding rules, the court shall, in its discretion and in accordance with equity, adopt such measures as it may deem proper to secure the effectiveness of the judgment."

every case in which a temporary remedy is sought, the court shall consider the interests of all the parties and shall enter judgment as substantial justice may require."

■ There is no doubt that the frame of action under Rule 56.1 is more ample and flexible than under the previous statute about the matter. However, it is not possible to conclude that it authorizes the attachment or garnishment of public funds even though these are available for the payment of government's creditors as are the suppliers and contractors of public works, the latter as to the amounts withheld to be paid at the termination and acceptance of the work. The reason is that the attachment or garnishment of public funds in these cases constitutes a "diversion" of public funds and until they are paid to the person entitled to receive them they cannot be considered at law as part of the property belonging to such person. Hence, in other jurisdictions as it appears from the previously commented cases, when it has been determined that public funds should be subject to attachment or garnishment it has been expressly so provided by legislation to that effect, the scope of which, as we have established, has been limited to the specific terms of its provisions.

In view of the fact that (a) garnishment is a civil procedure; (b) there is no statute in effect in Puerto Rico which authorizes the attachment or garnishment of public funds to secure or execute judgments against particular persons; (c) normally, the State cannot be restricted in the use of public funds through this proceeding unless it has consented thereto through legislation to that effect; (d) even in the jurisdictions where legislation consents to the garnishment of public funds, the courts have been precise in determining the scope of such consent; (e) neither Act No. 104, nor Rule 56 of the Rules of Civil Procedure, authorizes the attachment or garnishment of public funds to secure or execute judgments, we conclude that the order of the trial court of June 27, 1968,

which authorized the garnishment of public funds, did not lie, and, therefore, it should be set aside and rendered ineffective.[2]

Mr. Chief Justice and Mr. Justice Santana Becerra did not participate herein. Mr. Justice Pérez Pimentel concurs in the result.

---

[2] We are not deciding that the deposit in the trial court of any check which the government may issue in favor of defendant may not be ordered, the disposition of said sum being subject to the results of the litigation.